## Case No. 12,823.

### SHUFORD v. CAIN et al.

[1 Abb. U. S. 302; 1 16 Pittsb. Leg. J. 194; 2 Am. Law T. Rep. U. S. Cts. 187; 3 West. Jur. 294; 1 Leg. Gaz. 154.]

District Court, N. D. Georgia.    Sept. 14, 1869.

COURTS—PROCEEDINGS IN LAW AND EQUITY—JURISDICTION—VACATING JUDGMENT.

1. The commingling of law and equity in the same proceeding, which is allowed in the state courts of Georgia, is unknown in the national courts held within that state. These sit distinctly as courts of law, or as courts of equity.

2. In modern practice the courts incline to allow a question of regularity in the proceedings in a cause to be raised and determined upon a motion in the cause, instead of requiring the party aggrieved to sue out a writ.

3. A circuit or district court has no jurisdiction to entertain an action brought by an indorsee of a promissory note where both the maker and the payee and indorser are citizens of the same state. As the payee could not have sued the maker, his assignee or indorsee cannot do so, under section 11 of the judiciary act of September 24, 1789 [1 Stat. 78]. So *held*, notwithstanding the note was not negotiable in terms.

[Cited in Re College Street, 11 R. I. 475.]

4. A judgment and subsequent proceedings, had in a circuit or district court, which are void for want of jurisdiction, may be vacated upon motion in the same court, notwithstanding the expiration of the term at which the judgment was rendered.

[Cited in Woffenden v. Woffenden (Ariz.) 25 Pac. 668. Cited in brief in Jackson v. Hulse, 6 Mackey, 553.]

Motion to vacate a judgment and subsequent proceedings.

Mr. Hopkins, for the motion, cited [Gibson v. Chew] 16 Pet. [41 U. S.] 315; [Dromgoole v. Farmers' & Merchants' Bank of Mississippi] 2 How. [43 U. S.] 241; [Phillips v Preston] 5 How. [46 U. S.] 290, 291; [Connolly v. Taylor] 2 Pet. [27 U. S.] 556; 3 Bac. Abr. tit. "Error"; 12 Johns. 434; 14 Johns. 425; [Harris v. Hardeman] 14 How. [55 U. S.] 342; [Shriver v. Lynn] 2 How. [43 U. S.] 58; [Carter v. Bennett] 15 How. [56 U. S.] 356; [Harris v. Hardeman] 14 How. [55 U. S.] 345, 346; [Ex parte Crenshaw] 15 Pet. [40 U. S.] 119.

Mr. Weil, and Lochrane & Clark, in opposition, cited Popino v. McAllister [Case No. 11,277]; [Young v. Bryan] 6 Wheat. [19 U. S.] 146; [Evans v. Gee] 11 Pet. [36 U. S.] 80; Chit. Bills.

ERSKINE, District Judge. Elkanah Shuford, a citizen of the state of Alabama, brought assumpsit in this court against William C. Cain, as maker of a non-negotiable promissory note, and Joseph L. Grisham, as indorser of the same. The following is a copy of the note: "On or before the first day of January, 1863, I promise to pay J. L. Grisham the sum of seven hundred dollars, for value received of him, with interest from twelve months, this 12th October, 1860. W. C. Cain." The note was indorsed in blank by the payee, J. L. Grisham.

The writ was returnable at the March term, 1868. Service was acknowledged by defendants, but neither appeared. At the same term, judgment by default was taken, a verdict rendered and judgment final entered, upon which execution issued and was levied by one Dickson, a deputy marshal, on land as the property of Grisham.

Thus the matter stood until after the September term, 1868, when Grisham filed a bill, on the chancery side of this court, against Shuford and Dickson, to set aside the judgment, &c.; because, as alleged, the court had no jurisdiction of the subject matter of the action, both maker and indorser being citizens of Georgia when the note was made, and at the commencement of the action; that Grisham indorsed the note to one Galt, in part payment for a family of slaves purchased by him of Galt; and that he, Grisham, when the suit was brought, had, and still has, a good defense to the note, but, being sick during the term, he was unable to make the defense. On these grounds,—and on others unnecessary to mention here,—he prayed that the sale of the land be enjoined. A hearing on the bill alone was had at chambers. The injunction was denied; but the sale of the property was postponed, and time granted to defendants to demur, plead, or answer by the first day of the ensuing term, when the cause could be fully argued. Whereupon, counsel for Grisham asked for, and (no objection being interposed by defendants) obtained leave to file a motion on the common law side of the court—as ancillary to the bill, or in lieu of it. The motion was filed. It prayed, like the bill, that the judgment be annulled, and the fieri facias set aside, for reasons similar to those contained in the bill. Defendants filed no defense to either bill or motion. But (complainant making no objection) they were allowed to contend against the bill and motion, to the same extent as would have been proper had a demurrer been filed. In argument, they insisted that the former contained no equity, and the latter no law; at least, neither equity nor law which could avail the complainant at that late day—he being barred of any supposed rights by his own laches; and further, that the court had no power to enjoin the judg-

1 [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

ment, or to annul it, after the end of the term at which it was obtained. It was contended that the bill and motion are one proceeding; or, if distinct and separate proceedings, both must be rejected as inapplicable remedies, or, if not so, as coming too late.

I am relieved from passing upon some of the propositions advanced and discussed, as Mr. Hopkins, counsel for Grisham, elected to submit his case on the common law motion alone. Had he relied on both bill and motion, some embarrassment might have arisen, for the question would have presented itself, whether a party, in asking an adjudication in a United States court, could blend a proceeding which is properly cognizable in a court of equity with one properly cognizable in a court of law.

The United States courts are courts of law and equity. And it is the duty of the judge to see that the course of the court,—whether it be the court of chancery, of admiralty, or of common law,—is not invaded or altered. He must take care to preserve it. Const. art. 3, § 2; Bennett v. Butterworth, 11 How. [52 U. S.] 669.

In the courts of many of the states,—Georgia, for example,—law and equity are, in a greater or less degree, blended. This commingling is unknown in the national courts. These, as courts of law, entertain suits in which legal rights are to be ascertained and determined in contradistinction to equitable rights. As courts of equity, they entertain suits in which relief is sought according to the principles, and, in general, the practice of the equity jurisdiction as established in English jurisprudence. Parsons v. Bedford, 3 Pet. [28 U. S.] 447; Robinson v. Campbell, 3 Wheat. [16 U. S.] 212; U. S. v. Howland, 4 Wheat. [17 U. S.] 108; Pennsylvania v. Wheeling Bridge Co., 13 How. [54 U. S.] 519.

It was insisted, on the part of Shuford, that no relief could be given, in this particular case, upon a mere motion. But counsel did not name what he deemed a proper remedy, though he seemed to indicate that a suit of audita querela or scire facias, or a writ of error coram vobis, might possibly answer. The court will, however, leave the matter as it stands, and assume that a proceeding by motion is a suitable and also a not unusual remedy. This mode of investigating questions which are in their general features like these now under consideration, has, in modern days, been countenanced and adopted by the courts, by reason of being less expensive, and more simple and expeditious than those cumbrous and technically toilsome remedies just named. Staniford v. Barry, 1 Aiken. 321; Smock v. Dade, 5 Rand. [Va.] 639; Gordon v. Frasier, 2 Wash. (Va.) 130; [Langworth v. Screeven, 2 Hill (S. C.) 298];[2] Johnson v. Harvey, 4 Mass. 483; Baker v. Judges of Ulster, 4 Johns. 191; Crawford v. Williams, 1 Swan, 341, and cases

there cited; Ledgerwood v. Pickett [Case No. 8,175]; s. c., 7 Pet. [32 U. S.] 144; Wood v. Luse [Case No. 17,950]; Harris v. Hardeman, 14 How. [55 U. S.] 334.

A rule is, that the same court which pronounced and entered up a final judgment cannot, at a subsequent term, vacate it for errors in law; this is the doctrine of the common law, and also of the supreme court of the United States. Some of the exceptions to the rule are, where the judgment was irregular, or where no notice had been served upon the defendant, or for fraud, or misprision of the clerk. But none of these faults are relied on by Grisham, in the proceedings instituted by him to set aside and annul this judgment. He asks for relief because, as he avers, this court had no jurisdiction of the subject matter of the cause; indeed, that cognizance of it was positively inhibited by section 11 of the judiciary act of September 24, 1789. This objection is, I apprehend, the main, if not really the only, question for determination.

It is admitted by the pleadings, and was not disputed in the argument, that the note was made in Georgia; that Cain, the maker, and Grisham, the payee and indorser, were then citizens of Georgia, and so continued to be, and were citizens of, and residing in this state, at the commencement of the action. Also, that Grisham, when the interlocutory and final judgments were obtained, had, and still has, a good defense against the note; but, by reason of his sickness, he could not make his defense. Upon what matters of law or fact these additional objections to the validity of the judgment were based, was not brought to the notice of the court. Nor, indeed, was it necessary to present them.

It was argued by the learned counsel for Shuford that this being a non-negotiable note, it was not within the prohibition contained in section 11 of the judiciary act. This position is, I think, untenable. The section does not confine the jurisdiction to negotiable paper.

If Grisham, the payee of this note, had indorsed it to A., a citizen of another state, A. could bring an action against Grisham to recover its contents; for the indorsement of a non-negotiable note by the payee, ordinarily creates, as between him and the immediate indorsee, the same liabilities and obligations as are incurred by the indorsement of a negotiable note. But no action at law could be sustained by A. against Cain, the maker, without using the name of the payee, unless there was an express promise by the maker to pay A. Story, Prom. Notes, § 128, and note 4; Burmester v. Hogarth, 11 Mees. & W. 97; Matlack v. Hendrickson, 1 Green [13 N. J. Law] 263; Gibson v. Cooke, 20 Pick. 15; see 2 Pars. Notes & B. 44.

In Young v. Bryan, 6 Wheat. [19 U. S.] 146, it was held by the supreme court of the United States that a circuit court has jurisdiction of a suit brought by the indorsee of a

---

[2] [From 3 West. Jur. 294.

promissory note, who was a citizen of one state, against the indorser, who was a citizen of a different state, whether a suit could be brought in that court by the indorsee against the maker or not. See, also, Evans v. Gee, 11 Pet. [36 U. S.] 80.

Now, if Shuford be the immediate indorsee of Grisham, the payee (and of this presently), he could, as just remarked, have instituted a suit in this court against the payee, but not against the maker. And even if the cause of action were a promissory note payable to order, the indorsee could not bring a suit here against Grisham and Cain, payee and maker, because his assignor, Grisham, could never have sustained an action in this court against Cain,—Cain and Grisham being citizens of Georgia. Montalet v. Murray, 4 Cranch [8 U. S.] 46; Coffee v. Planters' Bank of Tennessee. 13 How. [54 U. S.] 183.

It was stated in the proceedings of file, that Grisham indorsed the note thus: "J. L. Grisham,"—to one Galt, and delivered it to him. If this be so, and the allegation was not denied or questioned,—the note being payable to a particular person only,—there has never been any privity in law between the subsequent holder, Shuford, and Grisham, the payee and indorser, or between the former and Cain, the maker. Consequently, Shuford could not bring a suit at law in his own name against Grisham and Cain, or against either of them. Story, Prom. Notes, §§ 128, 129.

Section 2732 of the Code of Georgia (1st Ed.) provides that the maker and indorser of a note may be sued in the same action. This mode of proceeding was adopted in the case at bar. The declaration contains one count. Independently of this provision in the Code, no such joint action is maintainable under the well established rules of pleading; because the liabilities of the maker of a promissory note and an indorser are distinct and independent—the one being primary and immediate, the other secondary and collateral—and they cannot in a national court be sued jointly, but must be proceeded against in separate actions.

In Keary v. Farmers' & Merchants' Bank of Memphis, 16 Pet. [41 U. S.] 89, 94, Mr. Justice Story, in giving the opinion of the court, said that it is not "competent for any state legislature to regulate the forms of suits or modes of proceeding or pleadings in the courts of the United States; but the sole authority for this purpose belongs to the congress of the United States."

The circuit and district courts of the United States are courts of limited, but not inferior jurisdiction, and they cannot exercise any jurisdiction which is not expressly, or by necessary implication conferred. But where they do possess jurisdiction they have a right to decide every question which occurs in the cause; and whether their decisions be correct or otherwise, their judgments are conclusive between parties and privies until reversed on error. If, however, they are without authority, their judgments are absolutely null, and form no bar to a recovery which may be sought, even prior to a reversal in opposition to them. This is the distinction between judgments which are voidable and those which are void. Shriver v. Lynn, 2 How. [43 U. S.] 43; Harris v. Hardeman, 14 How. [55 U. S.] 334; Carter v. Bennett. 15 How. [56 U. S.] 354; Atkinson v. Purdy [Case No. 616].

As has been already observed, Cain, the maker of the note, and Grisham, the payee, both being citizens of Georgia, the latter could not bring a suit in this court to recover the contents of the note against the former; for, by a provision in section 11 of the judiciary act, the jurisdiction is confined to cases in which "the suit is between a citizen of the state where the suit is brought, and a citizen of another state." Nor could any assignee or indorsee of Grisham sustain a suit here against the maker, in the face of the following prohibition in section 11: "Nor shall any district or circuit court have cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents if no assignment had been made."

Thus it will be seen that the present case falls directly within both of these clauses of the section. And with these facts before me, I cannot come to any other conclusion than that the rendition of the judgment was coram non judice, and therefore utterly void.

Counsel for Shuford contend that if the court should be of opinion that the judgment, so far as it affects Cain, is void, it must nevertheless stand good as against Grisham.

On inspection of the record, the judgment is found to be against both defendants—"that the said plaintiff do recover against the said defendants his damages aforesaid," &c. This judgment, being an entirety, if void in part, is void in all; if annulled as to one of the parties, it must be annulled as to both. 2 Saund. 101; Hemmenway v. Hickes, 4 Pick. 497. But if the judgment could have been several, instead of joint, I cannot perceive how Shuford would be thus benefited.

As to the position that if Grisham ever had any rights, he came too late to assert them—the reply is: if the judgment is a nullity, he is in time. Wood v. Luse [Case No. 17,950].

Ordered, that the judgment by default, the verdict and the final judgment be, and they are hereby declared null and void, and that the writ of fieri facias be quashed. But the writ and declaration may remain before the court until 10 a. m., on the last day of the present term; and, in the mean time, the plaintiff, Shuford, may move for leave to amend, if he should be of opinion that the court has power to grant any amendment in the proceedings.